————o————

THE CITY OF ST. JOSEPH, Appellant, *vs.* CHARLES W. DAVENPORT, Respondent.

.1.  *St. Joseph, city of—Act amendatory of charter—Recorder—Appeal from judgment of—Trial de novo.*—The act to amend the charter of St. Joseph. (Adj. Sess. Acts, 1863--4, p. 432,) authorizes appeals from the judgments of the recorder in the same manner and to such courts as in case of appeals from justices of the peace (§ 7 p. 435).  *Held,* that the appellate court is authorized to hear and try the cause *de novo.*  (Boggs vs. Brooks, 45 Mo., 232.)

*Appeal from Buchanan Circuit Court.*

*Chandler & Sherman,* for Appellant.

I. The appeal in the case at bar has the effect of *certiorari* and none other.   (County of St. Louis vs. Lind, 42 Mo., 348; Lacy vs. Williams, 27 Mo., 280; Lewis vs. Nuckolls, 26 Mo., 278; County of St. Louis vs. Sparks, 11 Mo., 202.)

Boggs vs. Brooks, (45 Mo., 232) is not in conflict with the appellant's position.   There the act expressly refers to a "trial anew;" no such language occurs here.

*B. F. Loan, and Strongs & Hedenburg,* for Respondent.

I. The act authorizes a trial *de novo,* in the appellate court. It declares, sec. 7, "that the appeal shall be in the same manner, and to such courts as appeals are allowed from judgments of justices of the peace."

City of St. Joseph v. Davenport.

NAPTON, Judge, delivered the opinion of the court.

This case presents only a single question, depending for its solution upon the construction of an act of the legislature approved Feb. 5th, 1864, entitled "an act to amend the charter of the City of St. Joseph." After providing for a publication of the delinquent list of taxes and apportionments due the city, the 4th section provides for a delivery of this list by the collector to the recorder of the city, accompanied with the collector's affidavit that it is a true statement of the unpaid taxes due the city, and properly apportioned on the real estate therein named; and it is also required to be accompanied with proof of the publication of notice in the newspaper as required in former sections. The recorder is then, after a certain lapse of time, authorized to receive testimony in regard to the proper levying, apportionment and delinquency of the taxes, and persons interested are allowed to appear and contest these matters, and then the recorder is authorized to render a general judgment against the whole or such part of the real estate, and the owners thereof, known or unknown, upon said list, as in his opinion the said city shall be entitled to, with interest and a penalty and costs, and such general judgment shall be considered and held as a separate judgment, as regards each distinct piece of real estate and the taxes and apportionments against it. This judgment is then declared valid and binding, and the exact form in which the recorder is ordered to render it, is given in the act, and it is declared conclusive evidence of the regularity and correctness of the levying of the taxes, and making the apportionments therein mentioned, and that the same as therein stated, are due and unpaid, and also of all proceedings in reference to said taxes and apportionments prior to the rendition thereof, with this proviso: "That any person directly interested in any real estate, against which a judgment has been so rendered, may appeal from said judgment, so far as the same concerns any of the real estate in which he has an interest, within ten days from the date thereof, and in the same manner and to such courts as appeals are allowed

from judgments of justices of the peace in civil cases, and provided also, that the party so appealing, shall pay to the recorder the costs of a transcript at the same rate that justices of the peace are allowed for transcripts; and such transcript shall only contain so much of the record in the cause as applies to the real estate of the party appealing; and provided further, that if said party so appealing shall not prosecute his appeal with effect and without delay, the appellate court shall affirm the judgment of the recorder with costs, and with a reasonable fee for the attorney of the city which shall be included in the judgment of such appellate court; which said judgment so affirmed shall from date bear interest at the rate of ten per cent. per annum, and shall be a special lien upon the real estate, &c., and shall be collected as other special judgments of such appellate courts are."

The 8th section of the act also gives this right of appeal to the attorney of the city in the same terms as previously given to the owner of the land, but exempts the city from giving bond, and further requires "that no more of the record be set out in the transcript by the recorder, than may be necessary to try and determine the question in controversy," and if the appellate court shall upon hearing the case reverse the judgment or render judgment in favor of the city, the same shall be with costs, and also with such additional cost and the penalty and interest, as the said recorder is required by law to include in his judgment in favor of the city; and said judgment of the appellate court shall bear the same interest from date, have the same legal effect and be collected in like manner as other judgments of appellate courts under this act."

The question is whether the appeal allowed by this act operates simply as a *certiorari* and only invests the Circuit Court with a power of review of what appears in the record, or as in appeals from justices' courts, authorizes a trial *de novo*.

It must be conceded that the intention of the legislature in allowing appeals from the recorder, is not very clear. Un-

der several decisions of this court it seems to have been settled, that a mere appellate jurisdiction, does not authorize a new trial in the appellate court; but that the appellate court merely reviews what appears on the face of the record. (County of St. Louis vs. Sparks, 11 Mo., 282; Lewis vs. Nuckols, 26 Mo., 279; Lacy vs. Williams, 27 Mo., 281.) Where there is a provision in the law allowing bills of exceptions in the tribunal having original jurisdiction, no inconvenience will arise and no injustice be done by regarding appeals as merely writs of *certiorari*, or writs of error; for the bill of exceptions will serve to place on the record such facts and decisions in the inferior court, as it is proposed to review on appeal. But where no bill of exceptions is allowed, an appeal or writ of error or *certiorari*, only bringing up for review the regularity or validity of the record proper, will in many cases totally fail to subserve the object for which the appeal is taken.

As it regards an appeal by the owner or claimant of the land, the law only authorizes the recorder to put in the transcript, so much of the record as applies to the real estate of the party appealing, but in regard to appeals by the city, the law provides, that no more of the record be set out in the transcript by the recorder, than may be necessary to try and determine the questions in controversy. Now the question in controversy may arise from facts which the record in neither case will show, as the only record specifically required in the 8th section is a mere tabular statement of the name of the owner, the number of the lot, the amount of tax, penalty and costs. No express provision is made for a bill of exceptions, nor does any seem to have been contemplated; yet it is difficult to see how the question in controversy could properly be determined in many cases without a bill of exceptions, if we construe the act as not giving the appellate court the right to try anew. In appeals from justices of the peace, the case is tried *de novo* in the appellate court, though under certain contingencies the judgment may be affirmed by the appellate court, or the appeal dismissed. This act authorizes appeals to be taken "in the same manner and to such courts

as appeals are allowed from judgments of justices of the peace in civil cases." The statute in relation to appeals from justices (2 Wagn. Stat., p. 847), requires the applicant to enter into a recognizance to the adverse party in a sum sufficient to secure the payment of such judgment and costs, conditioned that the applicant will prosecute his appeal with diligence to a decision; and that if on such appeal, the judgment of the justice be affirmed, or upon a trial anew in the appellate court judgment be given against him, he will pay such judgment, &c.

In the case of Boggs vs. Brooks (45 Mo., 232), there was an appeal from the judgment of the County Court, in a contested election case. The statute, as in this case, gave a right of appeal in general terms, and then the next section of the act provided for a bond—in terms, an exact copy of the same requirement in the law concerning appeals from justices' judgments, which has been copied above. There was no express grant of power to the appellate court to try the case anew, but the power to do so was held to be a necessary implication from the language of the section which provided the mode of appeal. We see no difference between that case and this. Had the legislature recited, as they did in providing for appeals in contested election cases, the provisions of the act concerning justices' courts which specifies the terms of the appeal bond or recognizance, it would have done no more to require the appeal as they have done here—to follow the manner and mode prescribed in the other statute referred to. There was no other manner prescribed in the act to take up the case, but to give just such a bond as is required in appeals from justices' courts, and the implication is as strong in the one case as in the other.

It is plain that a mere appeal from the recorder's judgment, containing nothing but a bare statement of names, dates and amounts, with no power to sign a bill of exceptions or put on the record any of the contested facts or points of law arising on them, would be a mere delusion which might be truly said "to keep the word of promise to the ear, and break it to the hope." Judgment affirmed. The other judges concur.